**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

      Plaintiff,

vs.

SEATGEEK, INC.
d/b/a www.seatgeek.com and
MIAMI MARLINS, L.P.

      Defendants

---

## COMPLAINT

---

COMES NOW Plaintiff Andres Gomez ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant SeatGeek, Inc. and Defendant Miami Marlins, L.P. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### <u>INTRODUCTORY STATEMENT</u>

1.    Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendants' business.

2.      Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3.      When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.      This case arises out of the fact that Defendant Miami Marlins, L.P. and Defendant SeatGeek, Inc. have operated their business in a manner and way that completely excludes individuals who are visually impaired from access to Defendants' business based upon Defendants' failure to provide auxiliary aids and services for effective communications.

5.      This complaint seeks declaratory and injunctive relief to correct Defendants' policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendants' business so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendants effectively and timely such that their access to places of public accommodation (which are the www.seatgeek.com website and the Marlins baseball park) are not impeded; as such impediment has rendered Defendants' business not fully accessible to the visually impaired.

6.      This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

7.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendants' business.

8.      This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

9.      State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

10.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant SeatGeek, Inc. is conducting business within the jurisdiction of this court by virtue of the fact its www.seatgeek.com website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District.

11.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant Miami Marlins, L.P. owns and operates the Marlins baseball team which is the primary entertainment event at the Marlins Baseball Park which is within this district.

12.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Juan Carlos Gil**

13.     Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the

state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

14.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is legally blind. Therefore, Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

15.     Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

**Miami Marlins, L.P.**

16.     Defendant Miami Marlins, L.P. is the owner of the Marlins baseball club and is the primary entertainment provider of the Marlins Baseball Park venue located in Miami Florida.

17.     Defendant Miami Marlins, L.P. is referenced as "Defendant Marlins," and also referenced collectively as "Defendants" along with co-Defendant SeatGeek, Inc.

18.     On information and belief Defendant Marlins has provided co-Defendant SeatGeek, Inc. the right to offer tickets to Miami Marlins baseball games for sale through its www.seatgeek.com website.

**SeatGeek, Inc.**

19.     Defendant SeatGeek, Inc. is the owner and operator of the website www.seatgeek.com ("Website") which is directly connected to Marlins baseball park and the Marlins baseball team.

20.    Defendant SeatGeek, Inc. is referenced as "Defendant SeatGeek," and also referenced collectively as "Defendants" along with co-Defendant Miami Marlins, L.P.

## FACTS

21.    Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

22.    At all times material hereto, Defendant Marlins was (and is) an organization which owns and operates the Miami Marlins baseball club, also known as "Marlins."  The Miami Marlins baseball club  is the primary entertainment at the Miami Baseball Stadium, as such, Defendant Miami Marlins, L.P. is defined as a "Public Accommodation" within meaning of Title III 42 U.S.C. §12181(7)(C) and 28 C.F.R. §36.104(2).

23.    By virtue of the fact that Miami Marlins baseball club baseball games are held within the Miami Baseball Stadium, the Miami Marlins baseball club falls within Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(C) and 28 C.F.R. Part 36.

24.    Defendant SeatGeek owns, controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.seatgeek.com ("Website").

25.    Defendant SeatGeek's Website permits the public to obtain formation regarding Defendant Miami Marlin's business such as the Marlins baseball club's schedule of baseball games for the season, and a seating chart that allows the user to view

all available seating and pick specific seats for viewing Marlins baseball games.  Another function of the Website is to provide auxiliary aids and services for the disabled.

26.     For all of the reasons as delineated hereinabove, clearly, Defendant SeatGeek's Website is an integral part of the provision of goods and services by Defendant Marlins. By this nexus, Defendant SeatGeek's Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(C) of the ADA[1].

27.     Since Defendant SeatGeek's Website permits the public to purchase tickets[2] to Miami Marlins' baseball games, the Website is also characterized as a sale establishment, which is a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(E).

28.     The Defendants must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

29.     At all times material hereto, Defendant SeatGeek was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public to purchase tickets to Defendant Miami Marlin's baseball club's baseball games held at the Marlins baseball stadium (Place of Public Accommodation), Defendant SeatGeek (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(C), and 28 C.F.R.

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.
[2] through the hyperlink http://miami.marlins.mlb.com/ticketing/index.jsp?c_id=mia

§36.104(2). As such, Defendant SeatGeek has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[3]

30. Plaintiff is an individual who likes American baseball and is interested in Miami Marlin's baseball club's baseball games.

31. Plaintiff called Defendant Marlins to inquire about the season's schedule for the purchase of purchasing tickets and Defendant's representative failed to fully assist the Plaintiff, and suggested he look at the schedule on the internet.

32. Plaintiff attempted on several occasions to utilize Defendant SeatGeek's Website to educate himself as to the baseball game schedule with the intent then going to the Marlins baseball stadium to enjoy a baseball game.

33. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

34. The Defendants' business contains access barriers that prevent the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendants' Website.

35. The Plaintiff attempted to locate an **Accessibility Notice**[4] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with Defendants.

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

36.     The fact that Plaintiff could not communicate with Defendants left him excluded from accessing the Marlins baseball games, the Marlins baseball stadium, and Marlins baseball activities and events, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

37.     The Plaintiff's inability to access and use accessible auxiliary aids and services has impeded and obstructed Plaintiffs ability to enjoy the goods and services at Marlins baseball stadium. Plaintiff's inability to enjoy and learn about the Miami Marlins baseball club resulted in a "virtual" concrete barrier which has precluded Plaintiff's purchasing Defendants' goods and services. Plaintiff's inability to learn about the baseball schedule, baseball player's statistics, fantasy baseball, and baseball memorabilia or to purchase a ticket to the Marlins baseball stadium has hindered, impeded and inhibited Plaintiff's entry to Marlins baseball park. Plaintiff has missed out on purchasing and enjoying Defendants' goods and services, and as such, Plaintiff has suffered particularized harm and suffered an injury in fact.  Because Plaintiff cannot communicate with Defendants, Plaintiff has not had access to to purchase tickets online for entry to the Marlins baseball park in order to enjoy a Marlins baseball game via Defendant SeatGeek's Website.

38.     Plaintiff continues to desire to patronize Defendants, but is unable to do so, as he is unable to effectively communicate with the Defendants in order to obtain access to Marlins baseball park in order to participate in the goods and services offered at

---

[4] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

Marlins baseball park. Plaintiff's inability to communicate with / comprehend Defendant SeatGeek's Website has impeded Plaintiff's ability to patronize Marlins baseball park physical location.  As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendants' omissions, policies, and practices set forth herein unless enjoined by this Court.

39.     On information and belief, Defendants have not initiated an ADA policy to insure full and equal use of their business by individuals with disabilities.

40.     On information and belief, Defendants have not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

41.     On information and belief, Defendants have not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

42.     On information and belief, Defendants have not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

43.     On information and belief, Defendants have not instituted an Automated Accessibility Testing program.

44.     On information and belief, Defendants have not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

45.     On information and belief, Defendants have not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created

an information portal explaining when and how the Defendants will have the www.seatgeek.com website, Applications, and Digital Assets accessible to the visually impaired community.

46.     On information and belief, Defendants' Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[5].

47.     On information and belief, Defendants do not have an Axillary Aids and Services Accessibility Policy.

48.     On information and belief, Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

49.     On information and belief, Defendants have not offered any other credible from of Auxiliary Aids and Services other than its Website.

50.     Thus, the Defendant have not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

51.     Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

52.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American

---

[5] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

civic and economic life. That mandate extends to internet websites, such as the www.seatgeek.com website.[6]

53.     On information and belief, the Defendants are aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services, which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

54.     On information and belief, Defendants are aware of need to provide full access to all visitors to the www.seatgeek.com website which supports the Marlins baseball park.[7]

55.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

56.     Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

57.     According to the National Federation for the Blind[8], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

---

[6] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[7] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)
[8] Statistics for 2012, see http://www.NFB.org/blindness-statistics

58.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

59.     Notice to Defendants is not required as a result of Defendants' failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

60.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

61.     Plaintiff utilizes his personal computer to access websites such as the www.seatgeek.com website. Plaintiff uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff stores his personal information and retains his browsing history on his personal computer.

62.     Throughout the Website, Defendant SeatGeek, Inc. has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

63.     Defendant SeatGeek, Inc. informs the Website user that the user's personal information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant SeatGeek discloses that any individual who accesses its Website and commences to shop on that Website is subject to having his/her personal information conveyed to third parties. According to the Website, those third parties

include (but may not be limited to service providers (without so naming the service providers), third-party ad servers, and other third parties (without so naming the third parties).

64.     The Plaintiff was unable to comprehend the Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of Defendant SeatGeek's installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

65.     Based upon the review of the Website, it is clear that, when a user accesses the Website, Defendant SeatGeek installs software onto the user's computer.  It is clear that Defendant SeatGeek has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

66.     As such, through its Website, Defendant SeatGeek has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AS TO BOTH DEFENDANTS

67.     Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-60 above.

## Requirement for Effective Communication

68.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

69.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."   28 C.F.R.

§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

70.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

71.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

72.     Defendant SeatGeek's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Marlins Baseball Park is A Place of Public Accommodation**

73.     By virtue of the fact that the Marlins baseball park is open to the public, to allow the general public to participate as fans to enjoy Miami Marlins baseball games, the Marlins baseball park is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(C). The ADA prohibits any and all barriers

which would limit access by the visually impaired to such places of public accommodation.

74.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a cafe, the visually impaired have no access to the goods and services of that cafe, which is both a Public Accommodation and a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

75.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[9]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

76.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9

---

[9] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

(citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

77.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

78.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[10]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

79.     The Website is a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(C) as it serves as an integral part of the Marlins' baseball games by providing the public information on the season schedule of Marlins baseball games, and the ability to view the stadium seating chart and to purchase available seats within the

---

[10] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

stadium for specific games, which provides the public the ability to determine if they wish to physically patronize the Marlins baseball park to enjoy Marlins baseball games.

80.     Pursuant to 42 U.S.C. §12181(7)(C) and 42 U.S.C. §12181(7)(E) Defendant SeatGeek is a *Public Accommodation* under the ADA because it owns and/or operates the www.seatgeek.com Website, as defined within §12181(7)(C) and 42 U.S.C. §12181(7)(E), such that Defendant SeatGeek is subject to the ADA.

81.     In addition, representatives within Marlins baseball park location have referred customers to the Website for additional information, as the Website provides information regarding the Marlins baseball club's schedule of baseball games and the ability to purchase tickets to the Marlins baseball park online, such that the Website is an integral part of the public's needs with respect to the business of professional major league baseball.

82.     By Marlins baseball park representatives referring the public /visually impaired individuals to internet websites which it licenses to sell tickets to its baseball games at its physical baseball park location, Defendant SeatGeek's Website has been rendered an integral part of Defendant Miami Marlin's physical business location (the Marlins baseball park). Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant Miami Marlin's physical business location.

83.     It is clear that the ADA applies to the Defendant SeatGeek's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to

changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

84.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[11] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[12] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

85.     Recent case law supports that the intangible barriers presented within Defendant's Website are violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by 0the ADA[13], Judge Socla drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person

---

[11] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.
[12] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services
[13] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

86.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services.  Plaintiff's injury is real, has occurred and is continuing. Plaintiff's injury will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

87.     Recent Case law supports the Plaintiffs position, that companies which that have not fully updated their websites so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

88.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

89.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable

modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

90.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

91.     As a result of the inaccessibility of Defendant SeatGeek's Website, visually impaired individuals are denied full and equal access to the Marlins baseball park (where Defendant Marlins' baseball club entertains the public), as Defendants have made available to the public through the information provided on the Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

92.     Types of website programming errors include (but are not limited to) *(i) Programming Error Types* ("PETs"), which are easily identifiable and correctable, *(ii) Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors ( DE's)  that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

93.     A sampling review of just part of the revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1)  The language of the document is not identified,
2)  Image alternative text is not present, and
3)  A form control does not have a corresponding label.

94.     Further, the Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1)  Alternative text is likely insufficient or contains extraneous information,
2)  An event handler is present that may not be accessible,
3)  A heading level is skipped,
4)  Flash content is present,
5)  Adjacent links go to the same URL,
6)  A link contains no text, and
7)  Alternative text is likely insufficient or contains extraneous information.

95.     More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

96.     Further, the Website does not offer include the universal symbol for the disabled[14] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

97.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither

---

[14]  , or HTML "Accessibility" link for those individuals who are visually impaired

fundamentally alter the nature of Defendants' business nor would it result in an undue burden to the Defendants.

98.     The Defendants have violated the ADA (and continue to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendants' Auxiliary Aids and Services. These violations within the Website are ongoing.

**Violations of the ADA**

99.     As a result of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

100.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an order to:

a)  Require Defendants to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.seatgeek.com website to a statement as to the Defendants' policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b)  Require Defendant SeatGeek, Inc. to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.seatgeek.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access

the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of obtaining formation regarding the Marlins baseball club schedule of baseball games for the season and of purchasing tickets to baseball games online. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendants to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through the Marlins baseball park physical location.

101.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants.

102.    For all of the foregoing, the Plaintiff has no adequate remedy at law

## COUNT II – TRESPASS AS TO DEFENDANT SEATGEEK, INC.

103.    Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–66 above.

104.    Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant SeatGeek on each and every date that the Plaintiff has accessed Defendant SeatGeek's www.seatgeek.com website. Plaintiff's personal information has suffered a trespass due

to the employment of software analytics by Defendant SeatGeek, which are present on its Website, which the Plaintiff has navigated.

105.    Plaintiff was unaware that Defendant SeatGeek's Website was placing software on his computer due to his inability to effectively communicate with its Website.

106.    Plaintiff did not consent to the placement of software on his personal computer; therefore Defendant SeatGeek has committed a trespass against Plaintiff.

107.    By the acts described hereinabove, Defendant SeatGeek has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

108.    Defendant SeatGeek's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

109.    At Defendant SeatGeek's Website location (https://seatgeek.com/privacy), Defendant SeatGeek states the following:

> "When you use SeatGeek to take advantage of any of our products and services, we may provide Personal Data to the ticket seller or other involved third party ."

> "We may enter into agreements with companies (including, for example, by way of a co-branded or private-labeled website) that offer their products or services on our Site or Application ("Third-Party Companies"). As a result, we may disclose your Personal Data to Third-Party Companies. Because we do not control the privacy practices of Third-Party Companies, you should read and understand their privacy policies."

110.    As a direct and proximate result of Defendant SeatGeek's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, Defendant SeatGeek has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)       By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)       By infringing on Plaintiff's right to exclude others from his computer;

c)       By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d)       By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)       By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

111.     For all of the foregoing, the Plaintiff has no adequate remedy at law.


**DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Miami Marlins, L.P. and Defendant SeatGeek, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendants have violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant SeatGeek, Inc. to update its Website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant SeatGeek, Inc. to clearly display the universal disabled logo[15] within its Website, wherein the logo would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.seatgeek.com website;

d) The Court enter an Order compelling Defendants to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendants' policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendants are in compliance with the ADA;

e) The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendants to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

---



g) The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) The Court to declare that Defendant SeatGeek, Inc.'s actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i) The Court to award injunctive and equitable relief as applicable, including:

   i. prohibiting Defendant SeatGeek, Inc. from engaging in the acts alleged above;

   ii. requiring Defendant SeatGeek, Inc. to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant SeatGeek, Inc.'s placement of software on their computer(s); and

   iii. requiring Defendant SeatGeek, Inc. to provide Plaintiff reasonable means to decline participation in Defendant SeatGeek, Inc.'s placement of software on his computer;

j) The Court award damages in an amount to be determined at trial;

k) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

l) As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by

Plaintiff; and permanent injunctive relief prohibiting Defendant SeatGeek, Inc. from engaging in the conduct and practices of trespass as complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just, and proper.

Dated this 31st day of July, 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*